Automation Group litigation. Mr. Nicholson. May it please the court. My name is Bob Nicholson and I represent Arlington Capital in this appeal. From an order of the Bankruptcy Court awarding attorneys fees to the extent that the award was for services rendered in connection with the prosecution of a claim under section 363N of the Bankruptcy Code. There were some other claims that were brought and we don't contest the award of fees for those services, just for the services in the 363N claim. Can you get to the standing issue because the law firms have said you appeal and you didn't really respond. I could have missed it. So why shouldn't we find that you waived any response? Well we're Arlington Capital's accreditor in this case and we filed a proof of claim, has not been objected to. I don't understand why we wouldn't have standing. Well if you win, you know, if this court says the 363N proceeding should not have generated fees, does your client come out ahead somehow? Well, in theory. Will he get even a dollar? Yeah, in practice at all or just in theory? Who knows? I mean that's the, possibly. Well I think that, but the trustee does know, right? No. The trustee's done nothing. I mean the trustee's sitting on $225,000 and, you know, there's a fee award. But if the fee award is reversed, then what's that $225,000 going to do? Arlington Capital is, in fact, a creditor. I mean, mind you, mind you. It stands in line ahead of Comerica. Isn't one of your positions that Comerica has this big lien? Well Comerica has a, here's our position real quick. Alright. That the 363N claim, right, was to recover the difference in value between the value of these assets that were sold and the price that was paid at the auction. Right. Comerica Bank had a lien on those assets for $7 million, right? We paid $2.7 million. The trustee claimed that the assets were worth $5 million, right? So if you look at it and you say, if we had paid what the trustee claimed these assets were worth at the auction, if we paid $5 million at the auction, it all would have gone to Comerica Bank. Okay. What then is the trustee doing, right? Why is he prosecuting this claim? It has no benefit to the bankruptcy estate and the Bankruptcy Code says that counsel is not entitled to be compensated for services not reasonably likely to benefit the bankruptcy estate. That's the way it goes. There's this whole issue about whether there are proceeds. There are proceeds of that $225,000 that are not related to the 363N claim. They're a recovery of preferences, which even Mr. McCarthy argues are not subject to the bank's lien. So there are funds in the estate. Depending upon what happens with the fee applications, there may be funds. And at the end of the day, you know, unfortunately, the way the Bankruptcy Code reads or works, this is our only opportunity to raise this issue, right? The whole issue of whether the 363N claim should have been pursued by the trustee could never have been raised by Arlington in connection with the prosecution of the claim itself, right? Trustee has standing to bring an action, right, under the Bankruptcy Code. Trustee has standing to do a lot of things, but that doesn't mean that he should. And, you know, it's unfortunate that we're here after the fact, but when you look at the whole context of a bankruptcy and, you know, and litigation in general, I think, you know, this Court has stated before, you know, litigations have- Well, what exactly does Arlington have to gain from- Well, Your Honor- Defeating the claim of the lawyers for fees? If you find that the prosecution of this claim was not reasonably likely to benefit the bankruptcy estate, right, there is a potential claim for Arlington to recover its fees. This Court- But give us the lineup in the Bankruptcy Court. Don't administrative fees have to be paid before Arlington? Oh, yeah, but they have to be approved. I mean- Now, you say the bankrupt estate just has $225,000. So, but following up on Judge Williams' question, looking at the order in which, you know, people are paid, is there any, related to the standing issues, is there any chance that Arlington will get a piece of that $225,000? It's theoretically possible. Yeah, but what are the amounts in the lineup? It's not much. I mean, I don't deny that. So, so the amounts in the lineup would be less than $225,000, so then whatever would be left would then go to your client? I thought we were dealing with amounts much greater than that. No, what we're dealing with is, we believe that this action should never have been prosecuted by the trustee, right, because it never had the possibility of benefiting the bankruptcy estate. I'm talking about the 363N action alone, right? The action for the 275, the 2.75, which would only have brought the value up to about $5 million. Up to $5 million, and if that amount had been paid at the auction, it all would have gone to the bank. Everyone acknowledges that. And what I can't understand is why, when that same $2.3 million difference is tried to, you know, they tried to get it through litigation, it goes someplace else. That's the issue. If you look at the Helms case that's cited in the material, it talks about, you know, proceeds of a secured creditor's collateral, and in the context of a claim, you know, that eventuates in an award that is calculated by the diminution in the value of the collateral as a result of the alleged wrongdoing. I mean, it's like the definition of the measure of damages under Section 363N. And for Arlington, we sit here, we spent hundreds of thousands of dollars defending this case. Hundreds of thousands of dollars defending a baseless case, a case that never had a possibility of generating a nickel for the some of this Court's opinions say, hey, when the trustee takes action that is not likely to benefit the bankruptcy estate, he subjects possibly himself or the lawyers to liability to the opposing party. And if you prevail here, you're going to petition for fees, is that right? Pardon me? If you prevail here, you're going to petition bankruptcy court for fees. Not the bankruptcy court. Not the bankruptcy court. We don't have a claim for our fees against the bankruptcy court. Which court are you going to be petitioning for fees? We potentially have a claim against the lawyers. The KPMG versus Maxwell case. You're going to sue the lawyers that represented the trustee in the 363N action. When you find that the prosecution of this action was not reasonably likely to benefit the bankruptcy estate, and it wasn't, it was guaranteed not to. Just because the trustee can do something, doesn't mean that he should, right? I mean, he cost us hundreds of thousands of dollars for... When Arlington was awarded costs after the finding that Arlington did not collude to keep the auction price down, it became an unsecured creditor. Correct. Right? For $5,000. So you're looking for that $5,000 and then attorney's fees? Correct. You want to say the rest of your time? Yeah. Thank you, Mr. Nicholson. Mr. McCarthy? Thank you, Your Honors. May it please the court, John McCarthy on behalf of the Appley Law Firms. To answer the question Judge Williams raised with respect to standing, Mr. Nicholson himself told the bankruptcy court, from which this appeal arises, that the Chapter 11 administrative claims were $300,000. The combined fee application, and of course, as Your Honors I'm sure are aware, Chapter 7 administrative claims come first, then Chapter 11 administrative claims, then any priority claims like priority tax claims, and I don't know whether they are here or not because it really doesn't matter because you don't even get past the administrative creditors with the 225. The combined awards to the two law firms are over $900,000. The record shows that there are two other law firms that are Chapter 7 administrative creditors that have yet to file their fee applications. Plus the trustee, the Chapter 7 trustee is entitled to a commission. So if you even get past the Chapter 7 administrative creditors with the 225,000, Mr. Nicholson represented that there were $300,000 worth of Chapter 11 administrative claims in this case. His client has zero chance, and he's got to prove standing to appeal. This court and all the courts of appeals across the country that have addressed the issue on have to have a pecuniary interest in the matter before the court, which means that either your property diminishes, your burdens increase, or there's some other pecuniary interest. They absolutely have none, and he told Your Honors this morning the real reason why he wants to do it, which is years after the fact he wants to sue the lawyers who brought the case, which Judge Springman twice reviewed on summary judgment before it went to trial, and twice said there was sufficient evidence to believe that there was collusion by Mr. Nicholson's client and the insiders with respect to the sale, and therefore, that the case could go forward. It was not a baseless case. As he said, Judge Springman twice said it had merit, that there was evidence sufficient to show it. The fact that a jury determined otherwise doesn't turn a case that was a good case into a baseless case. Plus, of course, there was a motion for a directive verdict during the trial in the 363N claim, which was not granted. So the underlying claim was not baseless, and Mr. Nicholson made a reference to the KPMG versus Maxwell case, and if Your Honors take a look at that case, in fact, the basis for pursuing claims against the attorneys was not the theory he's positing now, but instead was a violation of rule, a perceived violation of Rule 9011, which of course is, we're well past that stage in here. They didn't appeal. There was no action. The 363N claim has since been dismissed. No appeals were taken by either side. So there's no basis. His client does not have any pecuniary interest in this, and he doesn't have standing. In addition, his whole theory as to why there was no perceived benefit just does not square with the law. 363N is an avoidance claim. It also doesn't square with the facts, Your Honor, and two things. There are two stipulations of fact that you should keep in mind when you consider this case. The first one is that Arlington consented to the sale of the assets free and clear of its liens. So how he thinks that they could, after having consented to the sale free and clear of their liens, they somehow continue to have liens on proceeds, he's never explained. The second thing that he stipulated to in the pretrial order was that Comerica has never asserted that it has a lien, which of course goes back to the standing question. He's here trying to argue a point that Comerica says not only has it never asserted it, its lawyer testified in the trial in this case that it always can participate in any recovery as a general unsecured creditor. This is a, there's plenty of cases that say avoidance actions, the claim belongs to the trustee, the recovery belongs to the estate, you can't attach it pre, a pre-petition lien cannot attach to it, and unless you, the court has any further questions I'll rest on the brief. Okay, well thank you very much Mr. McCarthy. Mr. Nicholson, further? Thank you. Just a couple, real quickly, a 363N claim is not an avoidance claim. It does not arise upon the filing of a bankruptcy, it does not, it does not seek to recover a pre-petition transfer and redistribute property for the benefit of all the creditors. It arises as a result of a post-petition conduct, right, and unlike a preference action, which itself is the property that is the after-acquired property, the property that we're talking about here is the damages to property of the estate, which is the proceeds that are addressed in that Helms case, number one. The bank consented to the sale free and clear with liens to attach to the proceeds, the proceeds. What about Mr. McCarthy's standing point? Well, you know, I have no idea what the claims are, he had a clear idea, which he expressed. You know, I know there are some, I know there are some. Look, he made some very concrete assertions about prior claims. Now, is that true or false, or you simply have no idea? I really don't know. Well then I don't understand how you could claim to have standing. Well, what I do know is that... He says you don't, and you say you don't know. You don't know anything. No claims have been allowed, I'm pretty sure about that, right? Mr. McCarthy's firm... Well, is he wrong when he says these Chapter 7 administrative claims have priority? Chapter 7 would, sure, but no Chapter 7 administrative claims have been allowed. They haven't been allowed. So we haven't even gotten that far, is your point? Right. I mean, Mr. McCarthy's... Is it possible to reach your client's claims? It's theoretically possible. Mr. McCarthy's... What is the theoretical possibility you keep talking about? If Mr. McCarthy's claim is denied, it's the biggest claim by far. Why would it be denied? It would be denied because it was not for the benefit of the bankruptcy estate. That's what I'm asking. I'm saying that that recovery, that he saw it in connection with the 363N claim... Well, have you given reasons for thinking it would not be to the benefit of the estate? Absolutely, because it's the proceeds of the bank's collateral. When the bank... It was when your client consented to... No, we didn't consent to anything. Wasn't there consent to sale free and clear of liens? That didn't mean anything. The bank consented to the sale of its property free and clear of liens, right? Right. With the liens to attach to the proceeds of the sale. The bank got the $2.7 million, right? And would have gotten more. Right. Because the damages that were claimed were attributable to the value of that property. And our point is that the trustee didn't even allege that the value of the property exceeded the amount that was owed to the bank. And in that circumstance, there was never going to be any money available for unsecured creditors, and a trustee never should have brought the action. That's that. Okay. Well, thank you, Mr. Nicholson and Mr. McCarthy.